JOHNNY HENDERSON,

        Petitioner,

v.                                  Case No. 07-14071

BLAINE LAFLER,

        Respondent.

_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

On March 24, 2010, Petitioner Johnny Henderson filed an amended petition for a writ of habeas corpus. Petitioner challenges his convictions in the Wayne County Circuit Court for first-degree premeditated murder, M.C.L. § 750.316; possession of a firearm during the commission of a felony, M.C.L. § 750.227b; assault with intent to murder, M.C.L. § 750.83; and felon in possession of a firearm, M.C.L. § 750.224f. Following a jury trial, Petitioner was convicted on all counts and sentenced to terms of life for the murder conviction, 30 to 60 years for the assault with intent to murder conviction, three-and-one-third years to five years for the felon-in-possession conviction and two years for the felony-firearm conviction.

## I. BACKGROUND

On March 23, 2004, Jodie Agnew was fatally shot in Detroit. Rodney Jones, an eyewitness who knew both the victim and Petitioner, identified Petitioner as the shooter. Jones testified he and the victim had gone to Petitioner's residence to purchase cocaine, but left when no one answered the door. He heard a noise and a saw a flash

over his head, turned around and saw a man whom he believed to be Petitioner. Jones then saw the victim collapse, saying that he had been shot. Officer James Pierce heard a "radio run" and went to a house selected by his partner. Pierce heard glass breaking and saw Petitioner exiting the house via the rear. Pierce and other officers gave chase and pursued Petitioner. Inside the house, another officer found .223 caliber bullet casings. Officers found a Lymon 8-mm bolt action rifle and a Stern Ruger .224 mm mini-14 rifle at Petitioner's residence. A medical examiner testified that the victim's injury was consistent with those caused by high-powered rifles.

After his arrest, Petitioner gave two statements to police officers while in custody. In the first statement, he denied responsibility for the shooting. However, he later admitted shooting the victim in a second statement. Petitioner waived his right to counsel and signed an advice-of-rights form.

Petitioner appealed his conviction through the Michigan courts. On September 26, 2007, Petitioner filed an application for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. On May 5, 2008, Respondent filed a response. On March 24, 2010, Petitioner filed by leave of the court an "Amended Petition for Habeas Corpus" with a brief in support. Respondent did not file an amended response.

## II. STANDARD

Petitioner is entitled to the writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state court's decision is an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

"[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* at 410 (emphases in original). "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable.'" *Id.* at 409. "Avoiding these pitfalls does not require citation of [Supreme Court] cases—indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam opinion) (emphasis in original). Furthermore, "§ 2254(d) dictates a highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (citations omitted).

### III.  DISCUSSION

## A.  Prosecutorial Misconduct

In his first claim for relief, Petitioner asserts that the prosecutor's actions created unfair prejudice and denied him a fair trial.  In considering a habeas petition on the merits, the court reviews a petitioner's claims of prosecutorial misconduct with deference to the trial court.  *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v Parker*, 344 F.3d 487, 512 (6th Cir. 2003)).  To prevail on a prosecutorial-misconduct claim, Petitioner must demonstrate that the prosecutor's conduct or remarks, taken in the context of the entire trial, were prejudicial and "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (U.S. 1974).  Furthermore, "'[e]ven if the prosecution's conduct was improper or even universally condemned, this court can only reverse if the statements were so flagrant as to render the entire trial fundamentally unfair.'"  *Johnson v. Bagley*, 544 F.3d 592, 597 (6th Cir. 2008) (quoting *Gillard v. Mitchell*, 445 F.3d 883, 897 (6th Cir. 2006)).  The Sixth Circuit has listed four factors to consider in determining whether prosecutorial remarks were flagrant:

> 1)  whether the evidence against the defendant was strong, 2)  whether the conduct of the prosecution tended to mislead the jury or prejudice the defendant, 3)  whether the conduct or remarks were isolated or extensive, 4)  whether the remarks were made deliberately or accidentally.

*Slagle v. Bagley*, 457 F.3d 501, 516 (6th. Cir. 2006), *cert. denied*, 551 U.S. 1134 (2007).

The court does not concur with Petitioner's contention that the state's actions constituted prosecutorial misconduct.  Under *Slagle*, the court does not find the prosecutor's various statements to be flagrant.  *See Slagle v. Bagley*, 457 F.3d at 516. First, the evidence against Petitioner was strong.  Not only did Petitioner confess, but in

his confession he admitted he owned the kind of high-powered rifle the murderer used to kill the deceased.  (Tr., Vol. III, 62-63.)  Furthermore, an eyewitness testified to seeing Petitioner with the rifle in his hand immediately after he heard shots fired.  *Id*. Second, Petitioner has failed to show that the prosecutor's conduct "tended to mislead the jury or prejudice the defendant."  *Slagle*, 457 F.3d at 516.  Third, the prosecutor's remarks, when erroneous, were made in isolation.  Finally, all evidence points to the conclusion that the remarks were either correct or, when erroneous, accidental and promptly corrected.

<u>1)  Prosecutorial Statements Regarding the Burden of Proof</u>

"[T]he prosecutor must avoid commenting in such a way that he treads on the defendant's constitutional rights and privileges."  *United States v. Clark*, 982 F.2d 965, 969 (6th Cir. 1993) (quoting *United States v. Parker*, 903 F.2d 91, 98 (2d Cir.), *cert. denied*, 111 S.  Ct.  196 (1990)).  "[I]t would be improper for the prosecutor to suggest that the defendant had the burden of proof or any obligation to produce evidence to prove his innocence."  *Id.*  Petitioner contends the prosecutor's statements to the jury did just that.  Specifically, he states:

> The prosecutor argued to the jury that 'there is no such thing as proof beyond a reasonable doubt.' . . .  This was a direct invitation to the jury to disregard instructions from the court . . . requiring proof beyond a reasonable doubt.  It was a direct attack on the presumption of innocence and burden of proof, as well as the standard of proof beyond a reasonable doubt, constitutional requirements that apply to state court criminal trials.

(Pet. Brief 5) (internal citations omitted).  Assuming the accuracy of the transcript of the

prosecutor's closing statement,[1] the prosecutor did, in fact, utter the statement that Petitioner attributes to him, but the transcript also strongly suggests this utterance was at worst a passing misstatement which was cured multiple times during the closing statement.  The context of the remark clearly indicates that the prosecutor intended to say, "there is no such thing as proof beyond a shadow of a doubt."  The trial transcript supports this conclusion.

> [T]he People, as you were told in Voir Dire, and you're going to be instructed again in a few minutes, [] the People have the burden of proof. It's kind of what separates our system from some of the European systems.  We have the burden.
> The People are ones that are bringing the charges, so we should be the ones that have to prove it.  It's only fair.  I mean, the person accusing should have to prove it.  It's how our system works, and it's fair.
> But to what level should we have to prove it? And I'm sure we've all heard the terms proof beyond a shadow of a doubt, and proof beyond all doubt.  It makes great T.V., it makes great movies, and it's real good literature.
> But as the Judge told you in Voir Dire, those concepts don't exist in our system.  There's no such thing as proof beyond all doubt.  No such thing as proof beyond a reasonable doubt.
> I don't think anyone in the world could ever satisfy a proof beyond all doubt standard.  Because I know with me, unless I see something happen, I'm not going to be without a doubt as to what happened.  And if I see what happens, then I couldn't be a juror -- couldn't be a juror, I would be a witness.
> So the law recognizes that.  And what they say is that the People have to prove it beyond a reasonable doubt.  And it kind of suggests exactly what it is.  It's a doubt to which you can place a reason to.
> It's not a fanciful doubt, it's not a possible doubt, it's a reasonable doubt.  It's a fair honest doubt based on the evidence, or the lack of evidence.

---

[1] A "presumption of regularity" applies to a court transcript, *see, e.g., Parke v. Raley,* 506 U.S. 20, 31 (1992), but transcription errors are not unheard of. *U.S. v. Wallace* 597 F.3d 794, 809, n.1 (6th Cir. 2010) (noting transcription error made obvious by its context); *U.S. v. Greene ,* 2001 WL 45462, 2 (6th Cir., 2001) (noting transcription error subsequently corrected).

That's what the People's burden is, and you're going to hold me to
that burden.  And the People have met that burden.

(Tr., Vol. III, 55-57).  Defense counsel did not object to these remarks.

At multiple subsequent points during his closing remarks, the prosecutor made
reference to a reasonable-doubt standard.  Viewed in the context of his entire closing
statement, the court disagrees with Petitioner's contention that the prosecutor's
statement invited the jury to employ a standard below reasonable doubt, in
contravention of the court's jury instructions.  The prosecutor's multiple references in his
subsequent remarks to the proper reasonable-doubt standard show that any
misstatement of the standard was both inadvertent and more than adequately
corrected.

2)  Prosecutorial Statements "Appealing to the

Interests of Jurors as Taxpayers"

As his second example of prosecutorial misconduct, Petitioner cites the
prosecution's statement during the rebuttal portion of closing arguments.  The
prosecution argued: "You have the Detroit Police Department, overworked,
understaffed, and underfunded, and you're asking them to go do something that doesn't
make sense."  (Tr., Vol. III, 108.)  The prosecution was addressing defense counsel's
criticism of the Detroit police for failing to search for gunshot residue on the deceased.
After making the statement at issue, the prosecutor continued:

And why it doesn't make sense is, let's look[] at the evidence.  You
have two officers that are less than a block away from the shooting.  They
hear the shots.  Officer Wrights says that, 'I immediately go, and see Mr.
Jones standing over Mr. Agnew.  I then walk down there.'
So, he never loses sight of him.  He never sees anyone throw a
gun.  Never sees anyone toss anything.  He walks down there and

7

immediately -- he isn't sure what's going on, but thinks, well, he's saying that this guy, Mr. Agnew was shot, he may have a weapon.

So he immediately pats Mr. Jones down to find out, am I in danger here? Does this man have a weapon? No weapon found on him. Confiscate all the clothing, all the personal items of Mr. Agnew, who's laying on the ground. No weapon found anywhere amongst that.

They did a search of the area. No weapon found. The only thing found in the Keeler, Hazelton intersection was a bottle of liquor, which Mr. Jones told you they were drinking. That's the only thing found there.

You're not going to have gunshot residue if you don't fire a weapon. Why are the Detroit Police going to waste time and resources looking for gunshot residue, when in the area where the person was found, without ever having a Detroit Police officer lose sight of him, there's no weapon there? Why are we going to waste time doing that?

The Defense wants you to throw that somehow into your calculation of reasonable doubt. There's no claim here at all, other than the statement that these [sic] fired at him. They didn't fire at him, they never had a weapon. And that's why the police didn't do a gunshot residue test.

(Tr., Vol. III, 108-10).

Petitioner has cited various cases, none of them on point, for the proposition that the prosecutor was "appealing to [the] interest of jurors as taxpayers, unsupported by the evidence." (Pet. Brief 8-9.) Even assuming an appeal to jurors' interests as taxpayers may in some situations create unfair prejudice, this court finds no such statement—and no prejudicial impact—in this case. Viewed in the context of his argument of futility, the prosecutor's utterance was an inconsequential introductory remark echoing the perennial complaint about being "over-worked and underpaid," a gripe common enough to have been memorialized in song. *See* Randy Bachman, *Overworked And Underpaid*, *on* Any Road (Guitar Recordings 1992).

The prosecutor argued repeatedly that it would have been futile for the police to test the victims for gunshot residue when there was no evidence they had discharged a

weapon at Petitioner or anyone else.  There was nothing in any way improper about this remark, and Petitioner's argument is frivolous.

### 3)  Prosecutorial Expression of a Personal Opinion Regarding Guilt

As his third example of prosecutorial misconduct, Petitioner identifies a statement by the prosecutor during closing arguments, which he claims shows the prosecutor "vouching for [the] truthfulness of [the] prosecution['s] case, implying special knowledge of the facts."  (Pet. Brief 9.)  The prosecutor's statement which Petitioner identifies as such is the following statement: "[t]he basic reason is, I'm trying to be here putting the facts forth.  Wherever the facts go, that's where we get led . . . I'm presenting facts." (Tr., Vol. III, 96.)  The prosecutor later continued:

> I myself am not proving anything.  Because I wasn't out there at Keeler and Hazelton.  I'm not giving testimony.  Just like the Defendant, (sic), wasn't out there at Hazelton and Keeler.  He isn't giving testimony.
> I'm pointing out points of testimony that shows how the facts or the charges have been proven.  But I am not here to prove -- I myself cannot prove anything.
> So, when Defense stated to you in his closing argument that the People have to now get up and prove in the rebuttal how this happened -- I mean, I'm not up here to do that.
> Because if I was I'd have to get under oath and swear, and tell you what I saw.  I didn't see anything.  What I am talking about is what the evidence is showing.  And I only want you to consider the evidence.

(Tr., Vol. III, 96-97.)

"'[A] prosecutor may not express a personal opinion concerning the guilt of the defendant or the credibility of trial witnesses, because [such statements exceed] the legitimate advocate's role by improperly inviting the jurors to convict the defendant on a basis other than a neutral independent assessment of the record proof."  *West v. Bell*,

550 F.3d 542, 565 (6th Cir. 2008) (quoting *United States v. Carroll*, 26 F.3d 1380, 1387-89 (6th Cir. 1994)).

Here, Petitioner's interpretation of the prosecutor's argument appears wilfully blind. The prosecutor could not have been more clear in explaining that "I myself cannot prove anything * * * I didn't see anything." His argument in no way resembles one that "impl[ies] special knowledge of the facts" or that "refers to evidence not in the record." *United States v. Martinez*, 981 F.2d 867, 871 (6th Cir. 1992). Indeed, one wonders what Petitioner would have a prosecutor do other than to eschew first-hand knowledge and pointedly admonish the jury to only "consider the evidence."

Among the definitions of the word "fact" are "the quality of existing or of being real; actuality; truth" and "something said to be true or supposed to have happened." *Random House College Dictionary* (Rev. Ed. 1980). The prosecutor argued to the jury that the evidence (the "facts," the things "said to be true") would support Petitioner's conviction. A prosecutor's comments that are "supported by evidence in the record" (even to the extent of accusing a witness of "lying") are not improper. *West,* 550 F.3d at 564.

There was nothing improper about this argument. The accused statement was simply not an expression of an opinion "concerning the guilt of the defendant or the credibility of trial witnesses." *West*, 550 F.3d at 565.

### 4) Prosecutorial Disparagement of Defense Counsel

Petitioner identifies a solitary statement made by the prosecutor during rebuttal as constituting the denigration of defense counsel: "I'm not here trying to confuse, bring up red herring[s] so that you don't follow the facts." (Tr., Vol. III, 96.) Defense counsel

did not object to this remark at trial.  Even assuming that denigration of defense counsel constitutes prosecutorial misconduct, there is a distinct difference between an *ad hominem* argument and an attack directed to the merits of an idea.  The comments Petitioner identifies are mere arguments that the defense attorney's statements were misleading.  They in no way constitute personal denigration.  *See United States v. Moreno*, 899 F.2d 465, 468 (6th Cir. 1990) (prosecutor's "red herring" rebuttal argument "was merely discussing the evidence" and did not "interject her personal opinion.").

This court does not find the prosecutor's actions to be flagrant.  Certainly, the remarks were not "so flagrant as to render the entire trial fundamentally unfair." *Johnson*, 544 F.3d at 597 (quoting *Gillard v. Mitchell*, 445 F.3d 883 (6th Cir. 2006)).  Nor did they so "infect[] the trial with unfairness as to make the resulting conviction a denial of due process."  *Donnelly*, 416 U.S. at 643.

### B.  Jury Instructions

Petitioner contends the trial court "improperly shifted the burden of proof and undermined the presumption of innocence by defining reasonable doubt, not as a doubt that is reasonable, but as 'a doubt you can assign a reason for having.'"  (Pet. Brief 15.)  The Supreme Court has held that "[t]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  *In re Winship*, 397 U.S. 358, 364 (1970).  However, "not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation.  The question is 'whether the ailing instruction . . . so infected the entire trial that the resulting conviction violates due process.'"  *Middleton v. McNeil*, 541 U.S. 433, 437 (2004) (quoting *Estelle v. McGuire*,

502 U.S. 62, 72 (1991)).  The Supreme Court has held "the defendant must show both

that the instruction was ambiguous and that there was 'a reasonable likelihood' that the

jury applied the instruction in a way that relieved the State of its burden of proving every

element of the crime beyond a reasonable doubt."  *Waddington v. Sarausad*, 129 S.Ct.

823, 831 (2009) (quoting *Estelle*, 502 U.S. at 72).

The court rejects Petitioner's argument that the instructions relieved the state of

its burden of proof.  The trial court instructed the jury:

> Now, I explained to you when this trial first started that the burden
> of proof is on the People.  The burden never shifts.  There's no burden on
> the Defendant to do anything.  But the burden is on the People.
> And they have to prove to you that the crimes alleged in the
> Information were committed.  And they have to prove that beyond a
> reasonable doubt.
>
> * * *
>
> Now, the presumption of innocence starts at the beginning of the
> trial and goes throughout the trial, and even while you're in the jury room.
> However if 12 people find that the People have rebutted the
> presumption of innocence, and have proven to you beyond a reasonable
> doubt that the Defendant is innocent, but that he is in fact guilty, then the
> presumption of innocence again, would be rebutted.
> Presumption of innocence, again, is what we call a rebuttable
> presumption.  And it stands until you are convinced by evidence to
> convince you beyond a reasonable doubt that the accused is not innocent,
> but that he is in fact guilty.
> Now, I explained to you also that there's only standard of proof in
> Michigan.  And that is proof beyond a reasonable doubt.  The words have
> no difficult significance, it means exactly what it says.  A reasonable
> doubt.  A doubt that's based on reason and common sense.  A doubt
> which you can assign a reason for having.
> A reasonable doubt is not a flimsy doubt, or vain, or imaginary, or
> fictitious[] doubt, a hunch, or feeling, or a possibility of innocence.  It's a
> fair, honest, and reasonable doubt that's based on reason and common
> sense.
> In other words, when you go in there you take your everyday
> experience and common sense with you.  You don't leave it outside the
> door.  You look to the evidence, you apply your common sense and you
> make a decision.

Again, a reasonable doubt is a fair, honest, and reasonable doubt that's based on reason and common sense. The kind of a doubt that you can have reason for having.

It is not a flimsy, or vain, or fictitious, or imaginary doubt. A hunch, or a feeling, or a possibility of innocence. A fair, honest, and reasonable doubt.

And if you can say that you have an abiding conviction to a moral certainty, then you should bring back a verdict of guilty.

If you do not have an abiding conviction to a moral certainty, then you should bring back a verdict of not guilty.

Again, a reasonable doubt could arise out [of] the evidence, or the lack of evidence in the case. You look to that to make your determination.

(Tr., Vol. III, 114-16). Petitioner's trial counsel did not object to these instructions.

Petitioner takes issue with the following sentences from the jury instructions: "The words have no difficult significance, it means exactly what it says. A reasonable doubt. A doubt that's based on reason and common sense. A doubt which you can assign a reason for having." (Tr., Vol. III, 116.)

The court does not concur with Petitioner that these instructions effectively shifted the burden to the defense. As the transcript evidences, the trial court repeatedly emphasized that the prosecution bore the burden of proof. The instruction that a reasonable doubt is "[a] doubt which you can assign a reason for having" does not suggest a requirement of any "additional showings" by the jurors, as Petitioner contends. (Tr., Vol. III, 115.) It did not require the jurors to actually identify (either expressly or mentally) the actual reason for their doubt, nor did it attempt to quantify such reason. The judge was explaining the meaning of the term "reasonable doubt," in effect saying that a reasonable doubt is one based in reason. Being capable of having a reason for one's doubt—without being called on to express or identify it—seems to this court as the mere opposite of having a doubt that is "flimsy[], or vain, or imaginary,

13

or fictitious[,]" something very different from "a hunch, or [a] feeling[.]"  (Tr., Vol. III, 115).
A reasonable doubt is the opposite of a doubt entertained in the absence of reason.

The Sixth Circuit has not, apparently, ruled on this specific language.  Petitioner
cites to no such case.  The Second Circuit, reviewing similar—but more
problematic—language, has said that "instructing a jury that a reasonable doubt is 'a
doubt for which some *good* reason can be *given*' fundamentally misstates the
reasonable doubt standard."  *Chalmers v. Mitchell,* 73 F.3d 1262, 1274 (2d Cir. 1996)
(emphasis added).  The Fifth Circuit, although having recorded its "reservations" about
so-called "articulation" language that appears to require a "*serious* doubt for which [a
juror] could *give* a good reason," *see, e.g.*, *Humphrey v. Cain*, 120 F.3d 526, 529 (5th
Cir. 1997) ("*Humphrey I*"); reasoning adopted by *Humphrey v. Cain,* 138 F.3d 552, 553
(5th Cir. 1998) (en banc) ("*Humphrey II*") (emphasis added), has nonetheless
repeatedly observed that "the Supreme Court has never expressed disfavor with such
language."  *Muhleisen v. Ieyoub*, 168 F.3d 840, 844 (5th Cir. 1999).

Here, the trial court's instruction that a reasonable doubt may be a doubt "which
you can assign [or 'have'] a reason for having" is distinct from the instructions criticized
in the Second and Fifth Circuits in two ways: first, there is no normative qualifier, i.e.,
"good" or "serious," attached to the contemplated "reason"; second, inviting a juror to
picture a "reason" for doubt that he or she might merely "have" is rather different from
suggesting that there might be a "reason" that the juror can "give" during deliberations.
Indeed, the Fifth Circuit, in *Humphrey I,* focused its concern not on the concept of an
abstract "reason" as such, but on a juror potentially being called on to "give" a reason
—and not just any reason, but a "good" or "serious" one.  The court explained that

14

"inarticulate and undecided jurors" might be "less likely to give defendants the benefit of their doubts" if they perceived the law as "requiring articulation of good reasons." *Humphrey I*, 120 F.3d at 531. The court explained its fear that "a juror favoring guilt would have a powerful tool if he could demand that undecided jurors articulate good reasons for considering an acquittal." *Id.*

The court finds that the instruction challenged here, in the context of the multiple repetition of an undeniably correct explanation of the standard for reasonable doubt, does not give rise to the fears expressed in *Humphrey I*, and that it did not shift the burden of proof to the defense in contravention of Petitioner's Due Process rights. There exists no constitutional deficiency.

### C. Involuntary Confession

Petitioner contends that his confession was involuntary and, therefore, improperly admitted as evidence. In a habeas proceeding, "the ultimate question whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution is a matter for independent federal determination." *Miller v. Fenton*, 474 U.S. 104, 112 (1985). The potential circumstances a court can consider are police coercion, the length of interrogation, the location of interrogation, the continuity of interrogation, the suspect's maturity, the suspect's education, the suspect's physical condition and mental health and, finally, whether the suspect was advised of his *Miranda*[2] rights. *Withrow v. Williams*, 507 U.S. 680, 693-94 (1993). For a confession to be admissible, the

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

defendant must have given it voluntarily, but "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Colorado v. Connelly*, 479 U.S. 157, 167 (1986). The Sixth Circuit has adopted a three-factor test to determine whether a confession is involuntary. The court shall consider a confession as involuntary if and only if:

> (i) the police activity was objectively coercive;
> (ii) the coercion in question was sufficient to overbear the defendant's will; and
> (iii) the alleged policy misconduct was the crucial motivating factor in the defendant's decision to offer the statement.

*United States v. Rutherford*, 555 F.3d 190, 195 (6th Cir. 2009) (quoting United States v. Mahan, 190 F.3d 416, 422 (6th Cir. 1999)).

The trial court held a *Walker* hearing[3] to determine whether to admit Petitioner's purported confession. It admitted the confession over Petitioner's objection. Petitioner preserved his objections on appeal to the Michigan Court of Appeals and the Michigan Supreme Court. The state court of appeals summarized:

> Defendant gave his first exculpatory statement to Officer Olie McMillian on the night of the incident. Officer McMillian read defendant his rights and allowed defendant to read his rights. Defendant signed the advice-of-rights form and initialed each line. Defendant conceded at the Walker hearing that McMillian read him his rights. Defendant gave his confession the next day to Sergeant Marian Stevenson. Stevenson read defendant his rights and gave him the advice of rights form to re-read. Defendant read his rights aloud and indicated that he understood them both verbally and by initialing each of the rights. Defendant conceded at the Walker hearing that Stevenson read him his rights. Stevenson

---

[3] Under Michigan law, the state trial court must conduct an evidentiary hearing when a defendant challenges his confession's admissibility. *People v. Walker*, 374 Mich. 331 (1965).

recorded defendant's statement in writing. In the statement, defendant acknowledged that he had not been threatened to make the statement, and made it freely. Neither officer observed defendant to be intoxicated. Both officers denied that defendant suffered any physical abuse. Although defendant testified at the hearing that he was under the influence of drugs and alcohol when he was arrested, that he had asked for a lawyer, that a police officer slammed him against a wall, that he did not understand his rights, and that Stevenson promised him he would not be charged with first-degree murder if he talked, we defer to the trial court's determination of credibility.

*People v. Henderson*, 2006 WL 355133 (Mich. App. Feb. 16, 2006).

At the *Walker* hearing, the state provided evidence contradicting Petitioner's claims regarding coercive police conduct. The trial court appropriately made a credibility determination and denied Petitioner's motion to suppress the confession. This court must defer to the state court's findings of fact, unless rebutted by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). The presumption applies to "subsidiary factual questions" relevant to the voluntariness of confessions, but it does not apply to questions of law. *Miller*, 474 U.S. at 112. In determining whether a confession was involuntary, the court must look to the totality of the circumstances. *Rutherford*, 555 F.3d at 195 (citing *United States v. Greene*, 250 F.3d 471, 479 (6th Cir. 2001)). Evidence of police coercion causally related to the confession is necessary in any challenge to the voluntariness of a confession. *Colorado v. Connelly*, 479 U.S. 157, 164 (1986); *United States v. Cody*, 498 F.3d 582, 588 (6th Cir. 2007).

Petitioner has not successfully rebutted the presumption of correctness this court accords the state court's factual findings. Petitioner merely recites the same factual allegations rejected during the *Walker* hearing: that Petitioner asked every officer with

whom he came into contact for counsel, that Petitioner was subject to physical abuse, that Petitioner was held incommunicado until he would agree to confess, that Petitioner was denied food and water, that Petitioner was promised a lenient sentence, and that Petitioner was intoxicated. All these factual contentions were rationally decided after evidence by the trial court, and Petitioner has presented no reason to upset those findings. Petitioner has presented no facts not already rejected to show "objectively coercive" action by the police in obtaining his confession. *See Rutherford*, 555 F.3d at 195. Therefore, the court does not conclude that the state deprived Petitioner of his Fifth Amendment rights by admitting his confession.

### D. Ineffective Assistance of Counsel

In his fourth claim for relief, Petitioner contends his trial counsel's actions deprived him of the right to the effective assistance of counsel under the Sixth Amendment. Petitioner cites four examples of his trial counsel's conduct as constituting ineffective assistance of counsel:

> 1. Failure to object to prosecutor misconduct [misconduct discussed more fully in Issue 1].
> 2. Failure to object to instruction on reasonable doubt [instruction discussed more fully in Issue 1].
> 3. Failure to present an expert witness on false admissions to police.
> 4. Failure to present an expert witness on the grave danger of misidentification, and to request a jury instruction on it.

(Pet. Brief 26.)

The Supreme Court has established a two-prong test for determining whether a habeas petitioner has received ineffective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668 (1984). First, a petitioner must prove that counsel's performance was deficient, which "requires a showing that counsel made errors so

18

serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687. The Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that '[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Strickland*, 466 U.S. at 688). However, when assessing counsel's performance, the reviewing court should afford counsel great deference. *Strickland*, 466 U.S. at 689 (observing that "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time" and that a convicted person who seeks to criticize his attorney's performance "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy'").

Second, a petitioner must show that counsel's deficient performance was prejudicial. A petitioner may establish prejudice by showing "that counsel's errors were so serious as to deprive the defendant of a fair trial." *Strickland*, 466 U.S. at 687. To meet the "prejudice" prong of the *Strickland* test, a petitioner must show more than "some conceivable effect on the outcome of the proceeding;" he must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 693-94. No matter how deficient an attorney's performance, absent a showing of prejudice, "it cannot be said that the conviction [ ] resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687. As this court has concluded that neither the trial

judge's jury instructions, nor the prosecutor's actions were improper, defense trial counsel's failure to object to those remarks cannot constitute ineffective assistance.

Petitioner argues that the social science literature on the existence of eyewitness misidentification and misstatements during interrogation requires the production of expert testimony. There is no support for the proposition that this is a fundamental requirement in every case, and Petitioner's argument admits of no limiting principle. Indeed, the Sixth Circuit has expressly disavowed any such general rule, "recogniz[ing] that [the circuit] has held on at least two occasions that the failure of counsel to hire an expert in eyewitness identification did not prejudice the defendant in a criminal trial." *Forensic v. Birkett*, 501 F.3d 469, 483-84 (6th Cir. 2007) (citing *Dorch v. Smith*, 105 F.App'x 650 (6th Cir. 2004) and *Tipton v. United States*, No. 96-5026, 1996 WL 549802 (6th Cir. Sept. 26, 1996)). Petitioner has not identified any specific flaws in the eyewitness testimony that could be addressed by expert testimony to reduce unfair prejudice. Petitioner has not identified any valid grounds for objecting to the eyewitness testimony, nor has he identified any "substantial defenses available to the defendant" that would improve his chances of acquittal. *Beasley*, 491 F.2d at 696. Finally, Petitioner's argument on the decision not to request further jury instructions is not well taken because the trial court gave an instruction on eyewitness identification that closely tracked the Sixth Circuit's model instructions on the issue. The instructions being adequate, there was no constitutional error in failing to request further instructions.

Petitioner contends that an evidentiary hearing would be helpful, but has provided only generalizations as to the evidence he would provide at an evidentiary hearing and its usefulness to the court. The requested evidentiary hearing must be

denied unless Petitioner can show "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact-finder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254(e)(2)(B). Petitioner has failed even to attempt such a showing. The allegations put forth to support a claim of ineffective assistance of counsel are insufficient on their face to establish constitutional error. An evidentiary hearing would be inappropriate under these circumstances.

Petitioner has failed to show that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Nor has Petitioner shown that counsel performed "[un]reasonabl[y] under prevailing professional norms." *Wiggins*, 539 U.S. at 520. Therefore, this court rejects Petitioner's contention that he was deprived of the effective assistance of counsel in violation of the Sixth Amendment.

### E.  Cumulative Effect of Constitutional Errors

Finally, Petitioner contends that the cumulative effect of the alleged errors deprived him of a fair trial. "Errors that might not be so prejudicial as to amount to a deprivation of due process when considered alone, may cumulatively produce a trial setting that is fundamentally unfair." Walker v. Engle, 703 F.2d 959, 963 (6th Cir. 1983) (citations omitted); *see also Cooper v. Sowders*, 837 F.2d 284, 288 (6th Cir. 1988). In *Walker* and *Cooper*, serious errors of the trial courts in admitting improper and highly prejudicial evidence resulted in a violation of petitioners' rights. *Walker*, 703 F.2d at 968-69; *Cooper*, 837 F.2d at 288. Here, the "errors" Petitioner has alleged are not really errors at all. This court need not accept Petitioner's presentation of isolated sentences

21

from the trial transcript as establishing error, nor may this court upset the factual

findings of the trial court's *Walker* hearing without clear and convincing evidence.

Petitioner has produced no support for his claim of ineffective assistance of counsel.

The cumulative effect of these non-errors, therefore, did not produce a fundamentally

unfair trial amounting to a deprivation of Petitioner's right to Due Process.

### F.  Procedural Default

Respondent accurately contends that procedural default applies to the issues of

prosecutorial misconduct and erroneous jury instructions.  Petitioner failed to object to

the prosecutor's remarks or the trial judge's instructions to the jury.  *See Henderson*,

2006 WL 355133 at *1.  When claims are subject to procedural default, the court may

not review "unless the prisoner can demonstrate cause for the default and actual

prejudice as a result of the alleged violation of federal law, or demonstrate that failure to

consider the claims will result in a fundamental miscarriage of justice."  *Gulertekin v.*

*Tinnelman-Cooper*, 340 F.3d 415, 418 (6th Cir. 2003) (citing *Coleman v. Thompson*,

501 U.S. 722, 750 (1991)).  While ineffective assistance of counsel may excuse a

procedural default, Petitioner has not shown ineffective assistance of counsel.

Therefore, pursuant to 28 U.S.C. § 2254(e)(1), Petitioner has procedurally defaulted on

these issues.

The court initially considered both issues on the merits, as "federal courts are not

required to address a procedural-default issue before deciding against the petitioner on

the merits."  *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v.*

*Singletary*, 520 U.S. 518, 525 (1997)).  Nevertheless, procedural default provides an

alternative ground for denying Petitioner's application for the writ with respect to these two issues.

## IV. CERTIFICATE OF APPEALABILITY

A district court, in its discretion, may decide whether to issue a certificate of appealability ("COA") at the time the court rules on a petition for a writ of habeas corpus, or it may wait until a notice of appeal is filed to make such a determination. *Castro v. United States,* 310 F.3d 900, 903 (6th Cir. 2002). In deciding to deny the habeas petition, the court has, of course, studied the case record and the relevant law and concludes that it is presently well positioned to decide whether to issue a COA. *See Id.* at 901-02 ("[Because] 'a district judge who has just denied a habeas petition . . . will have an intimate knowledge of both the record and the relevant law,'" the district judge is, at that point, often best able to determine whether to issue the COA.) (quoting *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1072 (6th Cir. 1997), *overruled on other grounds by Lindh v. Murphy*, 521 U.S. 320 (1997)).

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (citation omitted). In this case, the court concludes that reasonable jurists would not debate the court's conclusion that the petition does not present any claims sufficient to grant the petition for habeas corpus. Therefore, the court will deny a certificate of appealability.

## V.  CONCLUSION

IT IS ORDERED that the "Amended Petition for Habeas Corpus" [Dkt.  # 13] is

DENIED.

This court DECLINES to issue a certificate of appealability.

                         s/Robert H. Cleland
                         ROBERT H. CLELAND
                         UNITED STATES DISTRICT JUDGE

Dated:  September 30, 2010

I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, September 30, 2010, by electronic and/or ordinary mail.

                         s/Lisa Wagner
                         Case Manager and Deputy Clerk
                         (313) 234-5522